IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOSHUA GRIZZLE, DAVID LEONARD,
and CALEB PIERCY, on behalf of
themselves and all others similarly
situated,

    Plaintiffs,   CASE NO.: __4:22-cv-109__

v.   JURY TRIAL DEMANDED

HUNTINGTON INGALLS
INCORPORATED, d/b/a Newport News
Shipbuilding, a Tenneco Company,

    Defendant.

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR
APPROVAL OF SETTLEMENT AGREEMENT AND FOR DISMISSAL
OF PLAINTIFFS' CASE WITH PREJUDICE; AND PLAINTIFF'S
<u>UNOPPOSED MOTION FOR CERTIFICATION OF FLSA COLLECTIVE ACTION</u>**

Joshua Grizzle, David Leonard, and Caleb Piercy ("Plaintiffs"), on behalf of themselves and all others similarly situated ("Putative Collective Members") and Huntington Ingalls Incorporated, d/b/a Newport News Shipbuilding Division ("NNS" or "Defendant") (collectively the "Parties"), jointly state as follows in support of their Joint Motion for Approval of Settlement Agreement and for Dismissal of Plaintiffs' Case with Prejudice. Moreover, Plaintiffs state as follows in support of their Unopposed Motion for Certification of the Collective Action defined herein, for the sole purposes of settlement.

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

This action was originally brought by the three Plaintiffs who are employed by Huntington Ingalls as welders at Newport News Shipbuilding in the X-18 Department within its Joint Manufacturing Assembly Facility ("JMAF"). On October 20, 2022, Plaintiffs filed a two count Complaint in the United States District Court for the Eastern District of Virginia, Case No. 4:22-

cv-109-RBS-LRL, against Defendant. ECF No. 1. The Complaint sought, on behalf of the named Plaintiffs and the Putative Collective Members declaratory, injunctive, and monetary relief to remedy allegedly unpaid overtime compensation. The Plaintiffs sought this relief under the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §201, et seq., and the Virginia Overtime Wage Act ("VOWA"), Virginia Code Section 40.1-29.2, as amended. On February 27, 2023, Defendant filed its Answer to Plaintiffs' Complaint denying liability and asserting twelve affirmative and other defenses to the allegations.

Between January 9, 2023, and the filing of this Motion to Approve the Settlement Agreement, Defendant supplied Plaintiffs' counsel with wage and payroll data for Plaintiffs and the Putative Collective Members, who were allegedly not paid all overtime compensation to which they are entitled. The Parties engaged in informal settlement negotiations, ultimately reaching a mutually agreeable settlement agreement (subject to this Court's approval). The Settlement Agreement resolves the claims in this litigation against Defendants by the Plaintiffs and any Putative Collective Member who affirmatively opt-in to the Settlement Agreement and release their claims (the "Settlement Collective Members"). Under the Settlement Agreement, the Plaintiffs and the Settlement Collective Members will receive settlement payments of approximately 1.6 times the wages Plaintiff claims they and each of the Putative Class Members are owed after the payment of all costs and attorneys' fees. Plaintiffs and their Counsel are satisfied that the proposed settlement is fair and reasonable. The Parties therefore ask the Court to approve the Settlement Agreement.

**II.    SUMMARY OF SETTLEMENT TERMS**

The Parties move for approval of the Settlement Agreement, attached hereto as **Exhibit 1**, and which contains terms which are generally summarized as follows:

### A. The Settlement Fund

The Parties have agreed to settlement of this matter for the Maximum Settlement Amount of $44,062.08. *See* Exhibit 1, ¶¶ I(O), III(A). The Maximum settlement amount includes the Collective Representative Service Award for the three Plaintiffs, and the Collective Counsel Payment. *Id.*, ¶ III(B). The remaining funds shall constitute the Net Settlement Amount. *Id.*, ¶ (III)(C). The Settlement Shares for the Plaintiffs and the Settlement Collective Members shall be paid from the Net Settlement Amount. *Id.*

The Parties have agreed to a settlement amount that results in a Settlement Share for each of the Plaintiffs and each of the Putative Collective Members in the amount of approximately 1.6 times the amount of wages Plaintiffs allege they and the Putative Collective Members are owed.

The Parties have agreed that the one hundred percent (100%) of the Settlement Shares paid to the Settlement Collective Members shall be allocated as wages subject to applicable withholdings and shall be reported on IRS Form W-2s. *Id.*, ¶ III(C)(ii). The Plaintiffs and any Settlement Collective Members who receives any Settlement Share shall be solely responsible for all tax obligations associated with such receipt. *Id.*, ¶ III(C)(iii).

### B. Eligible Employees

The Parties have agreed that the proposed Collective includes: those specific individuals listed on Exhibit A to Exhibit 1, which identifies all employees subject to the Agreement between Newport News Shipbuilding and the United States Steelworkers, dated July 10, 2017-November 14, 2021; and the February 7, 2022-February 7, 2027 Agreement between Huntington Ingalls Incorporated and the United Steel, Paper and Forestry and Service Workers International Union, who worked for NNS in Newport News, Virginia between October 20, 2019 and the approval

date of this Settlement Agreement ("Settlement Approval") on a four (4) day on, four (4) day off schedule in the Joint Manufacturing and Assembly Facility (JMAF). *Id.* ¶¶ I(B) & I(C).

According to Defendant's records, 56 individuals make up the Collective. The Parties have set forth the Settlement Share owed to each of the 56 members of the Collective should they opt-in to the Settlement Agreement. *See* Exhibit A to Exhibit 1.

### C. Releases

Subject to the terms of the Settlement Agreement, each Settlement Collective Member will release their claims against the Released Parties[1] as follows:

> Each Settlement Collective Member agrees to release all claims, rights, demands, liabilities, and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in the Action arising under the Fair Labor Standards Act ("FLSA") and the Virginia Overtime Wage Act related to unpaid wages, liquidated damages, and including all related claims for costs, attorneys' fees and interest against the Released Parties.

*Id.*, ¶¶ (I)(V), (III)(F)(i).

The three Plaintiffs also agree to execute a general release of claims in exchange for their Collective Representative Service Award. *Id.*, ¶ III(F)(ii); and Exhibit D to Exhibit 1.

### D. Collective Representative Service Award

In return for the risk incurred as serving as the named plaintiffs in this litigation, the services rendered to the Putative Collective Members, and upon appointment as the Collective Representative by this Court, the Parties have agreed the Collective Representatives may be paid

---

[1] The "Released Parties" are NNS, and its parent, subsidiary and affiliated corporations, organizations and entities, including without limitation Huntington Ingalls Incorporated, d/b/a Newport News Shipbuilding, and all of their respective past, present, and future affiliates, partners, joint ventures, stockholders, predecessors, successors, assigns, insurers, officers, directors, employees, agents, representatives, attorneys, administrators, adjustors, and independent contractors of all such released individuals, corporations, and entities. *Id.* ¶ I(W).

a Service Award of $3,400.00, which shall be divided between them, subject to court approval, in addition to their Settlement Shares as listed on Exhibit A to Exhibit 1. *See* Exhibit 1, ¶ III(B)(i).

### E. Notice & Settlement Administration

Within thirty-five (35) days of approval of the Settlement Agreement, each Putative Collective Member will be sent a Collective Notice Packet. The Collective Notice Packet will include the Court-approved Notice of Settlement ("Notice") and an Opt-In Form. *See* Exhibit 1, ¶ III(C)(vi); *see also* Exhibit B to Exhibit 1.

The Notice shall include (1) an explanation of why the Putative Collective Member is receiving the Notice; (2) identification of the pending litigation; (3) an explanation of how the settlement payments were calculated; (4) disclosure of the Collective Representative Service Award to be paid, upon Court approval, to each of the three Plaintiffs; (5) an explanation of how the Putative Collective Members may claim their Settlement Share, including the deadline by which they must take action to claim their Settlement Share; (6) and explanation of the tax liabilities related to the Settlement Share; (7) an explanation of the Released Claims they will be releasing if they opt-in to the Settlement Agreement; (8) an explanation of the Collective Counsel Payment; and (9) contact information for Collective Counsel in the event that the Putative Collective Members have any questions. *See* Exhibit B to Exhibit 1.

The Opt-In Form included with the Notice will include an endorsement which states:

I acknowledge that I have read the Notice of Settlement ("Notice") and understand that by returning this Opt-In Form, I am opting in to and agreeing to participate in the settlement of the lawsuit entitled *Joshua Grizzle, et al. v. Huntington Ingalls Incorporated*, No. 4:22-cv-109 (E.D. Va.) and that I am knowingly releasing federal and state statutory wage and hour claims, as further described as "Released Claims" in the Notice, and I am agreeing to be bound by all the terms set forth in the Notice.

I understand that by signing this form, I will be represented by Collective Counsel identified in the Notice of Collective Action Settlement for all purposes in this

    action. In understand that the Court has awarded Collective Counsel attorneys, fees, costs, and litigation expenses form the Gross Settlement Amount.

*Id.*

  Putative Collective Members will have 60 days from the date Defendant mails the Notices to return the Opt-in Form (the "Opt-In Period"). *See* Exhibit 1, ¶ III(C)(vii). Putative Collective Members who return their Opt-In forms within the Opt-In Period will become Settlement Collective Members and will receive the Settlement Share allocated to them on Exhibit A to Exhibit 1. *Id.*, ¶ III(C)(i). The Settlement Checks reflecting the Settlement Share allocated to the Settlement Collective Members will be issued within thirty (30) days of the conclusion of the Opt-In Period. *Id.* ¶ III(C)(vii). Putative Collective Members who do not return the Opt-In Form included in the Collective Notice Packet will not be bound by the Settlement Agreement, will not release their claims against the Released Parties, and will not receive a Settlement Share. *Id.*, ¶¶ III(C)(v) & (vii). Any portion of the Net Settlement Amount not claimed by the Settlement Collective Members will be retained by Defendant.

  **F. Attorneys' Fees and Litigation Costs**

  Under the Settlement Agreement, subject to Court approval, Collective counsel will receive a Collective Counsel Payment of $17,000. *Id.*, ¶ (III)(B)(ii). This amounts to 38.6% of the Maximum Settlement Amount and is inclusive of fees and reimbursement of out-of-pocket costs. It is critical to note, however, that the Putative Collective Members will receive, after payment of all attorney's fees and costs, 1.6 times the amount of wages they are actually owed. The named Plaintiffs will receive substantially more than the wages that they are actually owed with their service award after payment of all attorney's fees and costs. In other words, unlike many cases of this type, this is not a case where the work of Plaintiff's counsel has created a pool of between one and two times the wages actually owed from which a percentage contingency fee is deducted. In

this case, the attorney's fees were negotiated separately from the amounts owed to the Plaintiffs based purely upon Plaintiff's counsel's hourly rate and time expended.

## III.   ARGUMENT & AUTHORITIES

### A. The Agreement Meets the Requirements for Approval of an FLSA Settlement

In the Eastern District of Virginia, settlements in satisfaction of claims brought as collection actions under the FLSA and VOWA require court approval.[2] *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citation omitted); *see also Lynn's Foods Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."). Under the approach taken by courts in this district—which take their direction from the Eleventh Circuit— an FLSA/VOWA settlement should be approved if "the stipulated judgment proposed by the parties reflections 'resolution of a bona fide dispute," and is 'a reasonable compromise over [the] issues.'" *Kuntze v. Josh Enterprises, Inc.*, Case No. 1:28cv38, 2019 WL 2179220, at *1 (E.D. Va. May 20, 2019) (quoting *Lynn Food Stores, Inc.*, 679 F.2d at 1354-55).

Thus, the first step in any settlement approval is determining whether there is a bona fide dispute over liability and damages under the FLSA/VOWA. *Id.* at *1 (citing *Saman v. LBDP, Inc.,* No. CIV.A. DKC 12-1083, 2013 WL 2949047, at *3 (D. Md. 2013)).  Next, the Court must determine whether the Settlement Agreement is a fair and reasonable resolution of that dispute. *Id.* Although the Fourth Circuit has not specifically delineated a standard for determining whether an FLSA/VOWA settlement is a "fair and reasonable resolution," district courts in the Fourth Circuit usually consider six factors:

---

[2] VOWA incorporates the collective action procedures of the FLSA. Va Code Ann. § 40.1-29(J).

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel representing the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Id. (citing Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinkerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *5 (Sept. 28, 2009)). "Finally, where a proposed settlement of FLSA claims includes a provision regarding attorney's fees, the reasonableness of the award must also be independently assessed . . . ." *Id.* (citing *Saman*, 2013 WL 2949047, at *3).

Here, the Settlement Agreement represents a good faith compromise of the Parties' *bona fide* dispute over liability and damages under the FLSA and VOWA. Furthermore, the Agreement is fair and reasonable, as are the Collective Counsel Payment for the representation of the Plaintiffs and the Putative Collective Members in this action.

### B. Existence of a Bona Fide Dispute

To merit Court approval, the Settlement Agreement must resolve a bona fide dispute over FLSA/VOWA provisions. "To determine whether there is an actual dispute about the Defendant's liability under the FLSA [and VOWA], the Court may examine the pleadings as well as the representations made in the Settlement Agreement." *Kuntze*, 2019 WL 2179220, at *2 (citing *Duprey v. Scotts Co. LLC*, 30 F. Supp. 404, 408 (D. Md. 2014)).

Here, Plaintiffs alleged in the Complaint that Defendant violated the FLSA and VOWA by failing to pay some of its employees for all hours worked in excess of forty. *See* ECF No. 1. Defendant denied all of Plaintiffs' allegations in its Answer. *See* ECF No. 10. Moreover, the proposed Settlement Agreement specifically provides hat Defendant "denies that they have engaged in any wrongful, tortious, or other unlawful activity, have failed to comply with the law

8

in any respect, have any liability to anyone under the claims asserted in the Action, or that, but for the Settlement [Agreement] a Collective should be certified in the Action." *See* Exhibit 1, ¶ III(H). Therefore, a bona fide dispute exists between the Parties.

### C. The Settlement is Fair and Reasonable

Litigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo*, 2009 WL 3094955, at *10 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). When considering the factors relevant to determining whether a settlement is fair, adequate, and reasonable, courts should apply a "strong presumption in favor of finding a settlement fair." *Id.* (internal quotations omitted).

1. <u>The Extent of Discovery</u>.

The Parties have conducted sufficient discovery to allow them to understand the case, the range of damages, and to assess the potential varying outcomes of the case. Specifically, Defendant made available to Plaintiffs' counsel information regarding its pay policies and wage and payroll data for all of the Putative Collective Members. Plaintiffs' counsel is satisfied with the amount of data made available by Defendant, with his review of this data, and with his understanding of the potential damages in this litigation based on this data. Discovery in this case has been sufficient. The Parties know the important facts affecting the case and have adequately assessed the respective benefits of the settlement and potential risks of continued litigation.

2. <u>The Stage of the Proceedings</u>.

Settlement discussions occurred after significant efforts to narrow the scope of the disputed legal and factual issues. The Defendant demonstrated good faith participation in the settlement negotiations by making information on its policies and wage and payroll data available to

9

Plaintiffs for inspection, prior to any formal discovery. If litigation had progressed it would have been complex, expensive, and protracted. The Parties would likely have had disputes through factual discovery and certification, and eventually would have challenged each other in briefing on certification, liability, and damages. Defendant's counsel anticipated ultimately filing at least partially dispositive motions on the following issues: (1) whether Defendant had knowledge of Plaintiffs' alleged unpaid overtime work; (2) whether at least some of the work performed by certain members of the class was *de minimis*; (3) whether Defendant willfully violated the FLSA and/or the VOWA; and (4) whether Defendant complied, in good faith, with the FLSA. The Defendant had substantive arguments that, under the FLSA, the Plaintiffs were entitled to only the amount of allegedly unpaid overtime and were not entitled to any liquidated damages.[3]

By the time the Parties reached their agreed resolution, they had sufficient opportunity to evaluate their claims and defenses and engage in an arms-length settlement negotiation. They recognized that not only would it be a difficult and costly undertaking to proceed to the trial of this case, but also that the proposed resolution effectively achieved nearly 100% relief of the damages claimed by Plaintiffs on behalf of themselves and the Putative Collective Members. Thus, the Settlement provides significant monetary relief to the Plaintiffs and the Settlement Collective Members now, rather than risking an uncertain and unpromised resolution of contested issues. Settlement further provides the Defendant with peace of mind and certainty as to the exposure resulting from the asserted allegations. This supports the Court's approval of this

---

[3] Under VOWA, liquidated damages are mandated irrespective of the nature of the violation. However, VOWA was not in effect for the entirety of the Relevant Period. Receiving approximately 1.6 times the amount of overtime wages allegedly owed therefore approximates the best recovery of damages the Plaintiffs and the Putative Collective Members could have recovered if successful in litigation.

settlement. *Lomascolo*, 2009 WL 3094955, at *11; *see Hargrove v. Ryla Teleservices, Inc.*, No. 2:11cv344, 2013 WL 1897027 at *3 (E.D. Va. Apr. 12, 2013).

       3.      Absence of Fraud or Collusion.

In the absence of evidence to the contrary, courts presume that no fraud or collusion occurred between counsel. *Lomascolo*, 2009 WL 3094955, at *12; *Baust*, 574 F. Supp. 3d at 366. In this case, the Parties reached settlement after lengthy negotiations and analysis of evidence. The proposed Settlement Agreement was not the product of undue influence, duress, overreaching, collusion, or intimidation. Counsel for both Parties zealously represented their clients' interests and actively sought the best resolution given the claims, defenses, and complexities of the case. And ultimately, each Putative Collective Member will decide for himself whether to participate in the Settlement Agreement with the full benefit of the Collective Notice Packet. Thus, there is no evidence to suggest fraud or collusion between counsel.

       4.      Experience of Counsel.

When counsel has "experience in federal court and employment litigation . . . their opinion is entitled to weight." *Gagliastre v. Captain George's Seafood Rest., LP*, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019). Counsel for both Plaintiffs and Defendant are competent litigators with significant experience in Federal Court regarding employment law, wage and hour disputes, and multiple party claims. Both Plaintiffs' and Defendant's lead counsel are highly experienced in these actions and have served as lead counsel in complex collective action settlements that have been approved in this and other U.S. District Courts. Counsel litigated against each other, and brought to successful resolution, a previous substantial collective action of nearly all of Portsmouth's rank-and-file police officers. Their experience was acknowledged as satisfactory in the settlement of that case, *Funkhouser, et al v. City of*

*Portsmouth*, Civil Action No. 2:13cv520, 2015 WL 12765639, at *3 (E.D. Va. 2015) when Judge Morgan approved the settlement.  In addition, Plaintiffs' counsel previously represented nearly all rank-and-file Norfolk police officers in *Winingear v. City of Norfolk*, Civil Action No. 2:12cv560, 2014 WL 3500996, at *3 (E.D. Va. 2014), which resulted in one of the largest wage and hour settlements in this District.  Mr. Shoemaker's experience was acknowledged as satisfactory in that case.  Mr. Shoemaker's and Mr. McFarland's biographies are provided herewith as Exhibits 2 and 3.  Mr. Shoemaker and Mr. McFarland are sufficiently experienced to have negotiated this case for their respective clients.

      5.   Probability of Plaintiffs' Success on the Merits

With regard to the probability of success on the merits, when evidence presented indicates that a plaintiff has "significant hurdles to overcome to affect any recovery under the FLSA[/VOWA]," this factor weighs heavily in favor of finding the settlement fair." *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. Apr. 23, 2014). As stated above, recovery in this matter is not guaranteed.

Plaintiffs' claim that they were not paid for certain work that qualified for overtime premiums.  In response, Defendant asserted twelve affirmative and other defenses.  *See* ECF No. 10. Plaintiff and the Putative Collective Members would face disputes over what statute of limitations were appropriate, application of the de minimis doctrine, whether liquidated damages should be awarded, and whether the action could proceed to trial on a collective action basis, among other things. Defendant would hotly contest and vigorously defend all of these issues Because Plaintiffs would need to overcome each of them to succeed on the merits and recover at trial, this factor weighs in favor of approval of the Settlement Agreement.

6. <u>The Amount of the Settlement In Relation to the Potential Recovery</u>

The Settlement Agreement will compensate Plaintiffs and the Settlement Collective Members for approximately 1.6 times the overtime wages the Plaintiffs allege they are owed. This reflects the amount the Plaintiffs and the Settlement Collective Members could expect to recover at trial (the alleged overtime wages, plus an additional 60 percent reflecting the liquidated damages that could have been recovered for approximately 60 percent of the Relevant Period in which VOWA was in effect). Consequently, this Settlement brings value and certainty to the Plaintiffs and the Collective Members now, as opposed to years from now.

Given the amount of potential damages in dispute, the Parties acknowledged an early resolution of the matter would be beneficial, to save the costs of protracted litigation which could far exceed the possible damages at issue. Therefore, the amount of the settlement in relation to the potential recovery strongly weighs in favor of approval.

7. <u>The Agreement, Release(s), and Notices are Appropriate</u>

For proposed collective settlements under the FLSA/VOWA, it is necessary to provide potential members of the collective "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The Notice of Proposed Settlement of Collective Action clearly describes the terms of the Agreement, the relief available to the Collective, the amount of relief the particular Collective Member would receive by participating in the Settlement, and the procedures for (and consequences of) participating in the Agreement. *See* Exhibit B to Exhibit 1; *see also* Exhibit 1. The Notice will also describe the fees and costs that Collective Counsel will receive, and the Collective Representative Service awards the Plaintiffs will receive. *See id.* The Notice further

provides contact information for Collective Counsel and directs the Collective Members to contact Collective Counsel if they have any questions about the Settlement or its administration. *See id.*

In summary, the Notice provides the Collective Members with all of the information necessary to make informed decisions about whether to participate. The Parties therefore ask the Court to approve the Notice.

## IV. COLLECTIVE COUNSEL'S ATTORNEY'S FEES & COSTS

While under both the FLSA and the VOWA, an award of attorneys' fees and costs are mandatory, the reasonableness and total amount of the award is within the discretion of the Court. 29 U.S.C. § 216 (b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) ("The amount of the attorney's fees, however, is within the sound discretion of the trial court."). The Court determines the award of attorneys' fees by first establishing the "lodestar" amount, which the Court derives from a "reasonable hourly rate multiplied by hours reasonably expended." *Hargrove*, 2013 WL 1897027, at * 6 (quoting *Grissom v. The Mills Corp.,* 549 F.3d 313, 320-21 (4th Cir. 2008)).

The Court assesses "reasonableness" of requested attorneys' fees according to twelve factors articulated in *Johnson v. Ga. Highway Express, Inc.* 488 F.2d 714, 717-19 (5th Cir. 1974), as adopted by *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978); *Edelen v. Am. Residential Servs.*, 2013 WL 3816986, at * 12 (applying the twelve factors articulated in *Barber v. Kimbrell's Inc.* to a hybrid wage and hour settlement). The pertinent factors include the following:

>(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Edelen v. Am. Residential Servs.,* 2013 WL 3816986, at * 12 (internal citations omitted); *Galvez v. Americlean Servs. Corp.*, No. 1:11cv1351, 2012 WL 2522814, at *4 (quoting *Kimbrell's Inc.*, 577 F.2d at 226 & n.28). "[T]here is no strict manner in which the factors are to be considered and applied." *Trimper v. City of Norfolk*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994). However, in support of its requested fees and expenses, Plaintiffs' counsel must provide attorney affidavits and other evidence sufficient to support a finding that the requested amount is consistent with the above-cited factors and the prevailing market rates for the relevant community and type of work performed. *Hargrove*, 2013 WL 1897027, at ** 6-7; *Edelen*, 2013 WL 3816986, at ** 12-14. After arriving at the lodestar figure, the Court will deduct fees for hours expended on unsuccessful, unrelated claims and award of the remaining amount, which it finds attributable to Plaintiffs' successful ones. *Grissom*, 549 F.3d at 321.

This Court previously approved Plaintiffs' counsel's hourly rate of $500 per hour in April of this year. *Jeffrey L. Fletcher v. MWB, Inc., et al*, Case No. 4:21-cv-00162-RBS-LRL  It is clear that the lodestar calculation of all attorney time in this case will significantly exceed $17,000 (the limit to costs and fees to be paid under the Settlement Agreement) by the time of final approval and all work being performed in this matter.[4] The Notice to be issued to members of the putative collective action will identify the amount actually to be paid to each potential plaintiff. This

---

[4] A current statement of Plaintiffs' counsel's costs and fees in this action is attached as Exhibit 7. Plaintiffs' counsel's current costs and fees are $19,782.00.

15

amount will not be reduced by the payment of contingency fees or costs. Declarations supporting the hourly rates requested in this case are attached as Exhibits 4 through 6.[5]

## V.  CERTIFICATION OF THE PROPOSED COLLECTIVE

The FLSA and VOWA permit a plaintiff to bring an action on their own behalf, and collectively, on behalf of others similarly situated. *See* 29 U.S.C. § 216(b); Va. Code Ann. § 40.1-29(J). Utilizing the collective mechanism, Plaintiffs asks this Court to certify the proposed collective identified in the Settlement Agreement, for settlement purposes only. The proposed collective includes:

> **All employees subject to the Agreement between Newport News Shipbuilding ("NNS") and the United States Steelworkers, dated July 10, 2017-November 14, 2021; and the February 7, 2022-February 7, 2027 Agreement between Huntington Ingalls Incorporated and the United Steel, Paper and Forestry and Service Workers International Union, who worked for NNS in Newport News, Virginia between October 20, 2019 and the approval date of this Settlement Agreement ("Settlement Approval") as welders on a four (4) day on, four (4) day off schedule in the Joint Manufacturing and Assembly Facility.**

Plaintiffs maintain that the above defined collective consists of similarly situated employees. For the limited purpose of settlement, Defendant does not oppose certification of this settlement collective. Accordingly, certification is appropriate to effectuate the fair and reasonable settlement reached by the Parties.

## VI.  CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court enter an Order: (1) approving the Settlement Agreement (Exhibit 1); (2) approving certification of this FLSA collective action pursuant to 29 U.S.C. § 216 (b) and Va. Code Ann. § 40.1-29(J); and (3) approving the "Notice of Class and Collective Action Settlements" (Exhibit B to Exhibit 1) so that

---

[5] Declarations 5 and 6 were submitted to this Court in April 2023 and bear the style of the *Fletcher* case cited *infra*.

FLSA collective action members can receive notice of and the opportunity to receive money from this Settlement; and (4) dismissing this case, with prejudice.

Respectfully submitted,

| | |
|---|---|
| */s/ James H. Shoemaker, Jr.* | */s/ Robert W. McFarland* |
| James H. Shoemaker, Jr., VSB No. 33148 | Robert W. McFarland. (VSB No. 2402) |
| Patten, Wornom, Hatten & Diamonstein, L.C. | McGuireWoods LLP |
| 12350 Jefferson Avenue, Suite 300 | World Trade Center, Suite 9000 |
| Newport News, Virginia 23602 | 101 West Main Street |
| Telephone: (757) 223-4580 | Norfolk, Virginia 23510 |
| Facsimile: (757) 249-1627 | rmcfarland@mcguirewoods.com |
| jshoemaker@pwhd.com | |
| *Counsel for Plaintiffs* | Laura J. Cooley (VSB No. 93446) |
| | McGuireWoods LLP |
| | Gateway Plaza |
| | 800 East Canal Street |
| | Richmond, Virginia 23219 |
| | lcooley@mcguirewoods.com |
| | *Counsel for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that I will electronically file the foregoing with the Clerk of Court using the CM/ECF system on October 11, 2023, which will then send a notification of such filing (NEF) to all counsel of record.

>  */s/ James H. Shoemaker, Jr.*
>  James H. Shoemaker, Jr., VSB No. 33148
>  Patten, Wornom, Hatten & Diamonstein, L.C.
>  12350 Jefferson Avenue, Suite 300
>  Newport News, Virginia 23602
>  757-223-4580
>  757-249-3242
>  jshoemaker@pwhd.com